**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

BIEDERMANN TECHNOLOGIES
GMBH & CO. KG,

Plaintiff,

v. Action No. 2:18cv585

K2M, INC., et al.,

Defendants.

**OPINION AND ORDER**

This matter is before the Court on plaintiff's motion for partial reconsideration of the Court's December 2, 2021 ruling excluding expert testimony from Julie Davis. ECF No. 719. Plaintiff, Biedermann Technologies GmbH & Co. KG ("BT"), asks the Court to reconsider its decision to exclude Ms. Davis's opinions regarding the Stryker license for failure to apportion. *Id.* BT filed the motion and supporting brief on December 6, 2021. ECF Nos. 719–20. Defendants K2M, Inc., and K2M Group Holdings, Inc. (collectively, "K2M"), filed a response in opposition to BT's motion on December 20, 2021. ECF No. 765. BT filed its reply brief on December 22, 2021. ECF No. 771. As the motion is fully joined and oral argument is unnecessary, this matter is ready for decision. For the reasons noted below, BT's motion for partial reconsideration is **DENIED.**

**DISCUSSION**

**A. Standard of Review**

The Court assumes familiarity with its earlier ruling addressing K2M's motions to exclude settlement agreements and allegedly unreliable testimony by Ms. Davis. *See* ECF No. 711. The

circumstances under which a court will reconsider a prior decision are rare. It is inappropriate to seek reconsideration simply to reargue a claim previously rejected, *see Glenn v. Inland Container Corp.*, No. 3:92cv27, 1992 WL 521517, at *1 (E.D. Va. May 13, 1992), *aff'd*, 991 F.2d 789 (4th Cir. 1993), or to revisit "what the Court had already thought through—rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). Nor is reconsideration a vehicle for seeking multiple bites at the same apple, by iteratively refining arguments that could have reasonably been presented in the first instance. *See Wooten v. Commonwealth of Va.*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016).

Instead, a party may seek reconsideration of a ruling when:

> (1) a party produces "substantially different evidence," unavailable before the ruling; (2) "controlling authority has since made a contrary decision of law applicable to the issue," or (3) the "prior decision was clearly erroneous and would work manifest injustice."

*Williams v. Big Picture Loans, LLC*, No. 3:17cv461, 2020 WL 7680550, at *1 (E.D. Va. June 4, 2020) (citing *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003)). Reconsideration may also be sought when a court "patently misunderstood a party, or has made a decision outside the adversarial issues presented . . . , or has made an error not of reasoning but of apprehension." *Above the Belt, Inc.*, 99 F.R.D. at 101 (noting that "[s]uch problems rarely arise and the motion to reconsider should be equally rare").

**B. The grounds presented in support of BT's motion fail to support reconsideration of the prior ruling.**

**1. BT received a full and fair opportunity to oppose K2M's motion to exclude Ms. Davis's expert opinions.**

In seeking reconsideration, BT indicates that K2M, having initially posed no challenge to Ms. Davis's reliance upon Dr. Sachs's report in its motion to exclude, improperly argued for the first time in its reply brief that Dr. Sachs only addressed matters of technical comparability, rather

than value. ECF No. 722, at 2–4. This, BT argues, deprived it of a fair opportunity to respond to K2M's argument, caused the Court to rely upon an allegedly incomplete record, and resulted in a ruling in need of reconsideration. *Id.*

BT's contentions are not supported by the record. In response to K2M's opening arguments seeking exclusion of Ms. Davis's opinions for failure to engage in apportionment, *see* ECF No. 564, at 12–13, 15–17, BT argued, among other things, that "K2M completely ignores the opinions of Dr. [] Sachs . . . that the patented technology at issue is comparable in value to the technology in the historical licenses on which Ms. Davis predicates her opinion." ECF No. 604, at 5. BT also argued that, [REDACTED] Ms. Davis relied upon "the technical evaluation of Dr. Sachs . . . who explained that those other patents provided similar value as the patents at issue here." *Id.* at 11–12; *see also id.* at 8 (discussing the Stryker license).

Rather than sandbagging BT, K2M quite properly replied to these arguments by pointing to Dr. Sachs's contrary deposition testimony. *See* ECF No. 644, at 8–9. As recited in the Court's prior ruling, ECF No. 711, at 34–35, when asked whether he was opining as a surgeon about the values (equal, greater, lesser) of the licensed patents in relation to the asserted patents, Dr. Sachs responded "[t]hat was not my purpose in reviewing the licenses and the technical comparability of the patents. I wasn't looking to that and I wasn't trying to determine that." ECF No. 645-1, at 3 (212:11–20); *see* ECF No. 723-1, at 4, ¶ 2 (describing his task as "to opine regarding the benefits of the Patents-In-Suit . . . as well as *regarding the technical comparability* of patents covered by certain license agreements entered into by Biedermann . . . and the Patents-In-Suit") (emphasis added). K2M's reply brief properly responded to and addressed an argument made by BT in opposing the motion to exclude.

Following K2M's filing of its reply brief, BT had ample opportunity to respond to K2M's argument and references to Dr. Sachs's deposition. The Court held a hearing on the motion to exclude and certain other pending motions on October 14, 2021. ECF No. 674, at 1–4. During the hearing, the Court gave the parties the opportunity to present testimony and other evidence, and BT advised that it did not seek to do so. *Id.* at 2–3. The Court also entertained extensive argument on the motion to exclude Ms. Davis. *Id.* at 5–56. During this argument, BT supplied the Court and counsel for K2M with various PowerPoint slides summarizing its arguments and responding to K2M's arguments. *Id.* at 2–3, 21; *see* Ex. A. These included 42 slides directed to the motion to exclude, and discussing, among other things, the comparability of the disputed licenses (both technically and economically), Ms. Davis's analysis, Dr. Sachs's analysis and Ms. Davis's reliance thereon, BT's licensing policy, apportionment, and K2M's briefing of the motion. Ex. A. In responding to K2M's oral argument, BT's counsel reviewed these slides in detail, marshaling BT's arguments against exclusion of Ms. Davis's opinions. ECF No. 674, at 21–41.

During this discussion, counsel for BT brought to the Court's attention a recent Federal Circuit decision issued the day that K2M filed its reply brief, September 14, 2021, ECF No. 644, in support of BT's built-in apportionment argument. ECF No. 674, at 35; *see* Ex. A at 25; *see also Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361 (Fed. Cir. 2021). Because BT properly raised this new opinion for the first time during oral argument and, due to K2M's counsel unfamiliarity with it, the Court allowed K2M's counsel an opportunity to discuss the case after review during a lunch break. ECF No. 674, at 63, 67–69. Following oral argument on the motion to exclude, the Court took the motion concerning Ms. Davis under advisement, *id.* at 56, through December 2, 2021 (the date of the Court's ruling) ECF No. 711, at 1.

The foregoing timeline demonstrates that BT received a full and fair opportunity to present both the factual and legal bases for its arguments in opposition to the motion to exclude Ms. Davis's opinion for failure to apportion. K2M engaged in no impropriety in replying to BT's brief in opposition to the motion to exclude. Any failure, if one even occurred, to develop the record further rests with BT, rather than K2M or the Court. Nor is there any basis for any claimed surprise relative to the Court's consideration of Dr. Sachs's opinions relative to the issue of apportionment. The Court did not reach outside the adversarial issues presented by the parties when ruling on the motion to exclude. Moreover, having invited consideration of the *Omega Patents* ruling, BT has no valid complaint that the Court and K2M accepted the invitation. *See* ECF No. 760, at 17 (arguing that the Court "reach[ed] its holding, . . . cit[ing] . . . a . . . case—*Omega Patents*—that was not briefed by any party").

**2. In response to K2M's argument that Dr. Sachs did not consider the comparative value of the technology licensed relative to any infringing uses made of the asserted patents, BT argued that Dr. Sachs addressed technical comparability and Ms. Davis addressed matters of economic comparability.**

In seeking reconsideration, BT relies mostly on facts it previously declined to present, as well as on arguments not presented after K2M disputed BT's claim about the scope of Dr. Sachs's opinions. As noted above, K2M's reply to BT's briefing on the motion to exclude contested BT's claim that Dr. Sachs opined that the technology licensed to Stryker, among others, was comparable in value to the patented technology allegedly infringed by K2M. ECF No. 644, at 8–9. During argument on the motion to exclude, K2M reiterated this very same point. ECF No. 674, at 16–18. K2M's counsel argued, among other things:

> The problem with that is that Dr. Sachs, at his deposition, actually testified to the contrary. He said that he had not reached any opinion as to whether those patents in the other licenses were of lesser, equal, or greater value than the patent at suit.

> And that's in his deposition at pages 211 to 213, and I know we cited that at some point in our papers here, Your Honor. So that's why you couldn't get apportionment from these other licenses.

*Id.* at 18; *see id.* at 43–44.

In response, BT did not contest K2M's point. Instead, BT argued that Dr. Sachs addressed matters of technical comparability and that Ms. Davis addressed matters of economic comparability. *Id.* at 26, 29–35; *see* Ex. A at 27 (arguing for "baked in apportionment" for the Stryker license and noting that "Dr. Sachs deems technology comparable to asserted patents" and "Ms. Davis concludes economic comparability"); *see also* Ex. A at 26, 28 (making the same argument for the Allez, Alphatec, and NuVasive licenses). BT drew a distinction between technical and economic comparability and confirmed that both needed to be established. ECF No. 674, at 29; *see Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1331 (Fed. Cir. 2009).

BT argued that Dr. Sachs assessed the technical comparability between the licensed patents and asserted patents allegedly infringed by K2M (and that Ms. Davis relied thereon), and that Ms. Davis assessed economic comparability. ECF No. 674, at 26, 29–39. On approximately ten occasions, counsel for BT repeated the point that Dr. Sachs addressed the issue of technical comparability. *See, e.g., id.* at 38 (noting that "the point is that Dr. Sachs says, from a technical comparability standpoint, this technology is comparable"); *see also id.* at 26, 31–34, 36.[1] Nowhere did BT argue that Dr. Sachs addressed questions of economic comparability or seek to rebut K2M's contentions concerning his deposition testimony.[2]

---

[1] On several occasions, counsel referred to comparability generally, but the context and the accompanying slides establish that such references were to technical comparability. ECF No. 674, at 32–33, 36.

[2] BT's contention that the Court diverted and prevented it from fully addressing Dr. Sachs's testimony is mistaken. *See* ECF No. 771, at 8 n.1, 15. In fact, as the transcript reflects, the Court asked counsel to address the issue of apportionment, and noted its familiarity with Ms. Davis's

After arguing that Dr. Sachs's opinion on technological comparability went unchallenged by K2M, counsel for BT turned to Ms. Davis's role in assessing economic comparability stating:

> So what Ms. Davis then does is in assessing . . . the economic comparability of these licenses—because we go back to the drawing board, right to the beginning. You have comparability, you have technical, you have economic. In assessing, because she's a financial expert, she takes into account what Dr. Sachs does and relies on what he says; that this technology is, in fact, comparable.
>
> If you look at all the cases that the defendants cite to, that element in the cases that they cite to is, by and large, missing. In fact, it is telling, your Honor, that in their opening brief challenging Ms. Davis' report on the failure to apportion that they never mention her reliance on Dr. Sachs. And I'll get to the apportionment issue. . . . So technical comparability, check. . . . .
>
> Economic comparability—she goes *ad nauseam* into an analysis of all of these licenses; who was at the table, what were the situations, what were the competitive tensions, et cetera, et cetera, et cetera.
>
> Am I saying they can't challenge Ms. Davis at trial about the economic comparability of these licenses? No. Of course they can. But that's a fact-finder issue, not a *Daubert* issue.

*Id.* at 33–34. This characterization of Ms. Davis's role comports, of course, with her expertise as an accountant and auditor, who opines regarding damages in business and intellectual property disputes. *See* ECF No. 568-1, at 4, 7.

BT also repeatedly highlighted this division of labor between Dr. Sachs and Ms. Davis on matters of technical and economic comparability in the slides presented during oral argument. Slide 12, for example, notes that Dr. Sachs evaluated the "technology of each asserted patent" and found "all asserted patents [to be] *technically comparable* to [the] historically licensed technology." Ex. A at 12 (emphasis added). The slides repeatedly quote from Dr. Sachs's opening

---

opinions concerning K2M's marketing of the features of the asserted patents. *See* ECF No. 674, at 35. This exchange followed the conclusion of counsel's discussion of Dr. Sachs's opinions regarding technical comparability and his transition into Ms. Davis's role in assessing economic comparability. *Id.* at 31–35. This is also confirmed by Exhibit A, as counsel's argument closely tracks the slides BT supplied to the Court. Ex. A at 12–19.

report and his opinions regarding technical comparability. *Id.* at 13–14. Slide 15 recites Dr. Sachs's deposition testimony that all of the licensed patents were technically comparable to the patents-in-suit "because they were used for similar purposes to treat similar situations by surgeons treating spinal conditions." *Id.* at 15. After reviewing Dr. Sachs's opinions, the slides show a check in the box for "technically comparable," above an unchecked box for "economically comparable." *Id.* at 17. The slides then review Ms. Davis's analysis regarding economic comparability and conclude with a slide checking the box for economic comparability. *Id.* at 18–23. Finally, in addressing the question of built-in apportionment, the slides summarize four licenses, including the Stryker license, and note with respect to each license "Dr. Sachs deems technology comparable to asserted patents" and "Ms. Davis concludes economic comparability." *Id.* at 26–28.

BT's argument also accorded with the underlying facts and deposition testimony presented to the Court prior to the ruling on the motion to exclude. BT supplied with the Court with excerpts of Dr. Sachs's initial report and a complete copy of his reply report. ECF Nos. 605-1, 605-4. The first of these documents pertained to Dr. Sachs's review of the Stryker license (and other licenses) and began with a section heading entitled "Technical Comparability of the Comparable Licensed Patents." ECF No. 605-1, at 3. Consistent with BT's argument, Dr. Sachs stated that he "reviewed information related to several license agreements that I understand may relate to damages in this case . . . [and] [s]pecifically, I looked at the patents that are the subject of the license, and determined whether they were technically comparable to the Patents-In-Suit." *Id.*

Dr. Sachs then reviewed the Stryker license. After identifying the technology licensed to Stryker, Dr. Sachs previewed his conclusion noting that "the patents and patent applications licensed to Stryker . . . are technically comparable to the Patents-in-Suit. *Id.* at 3–4, ¶¶ 90–91. He

then reviewed in greater detail the licensed technology and, in comparing it to the asserted patents, repeatedly opines that the licensed technology is "technically comparable" to asserted claims in the patents-in-suit. *Id.* at 4, ¶¶ 92–108. After doing so, he summarizes his conclusion as follows, "my opinion is the subject matter of the licensed patents . . . is technically comparable [redacted] the subject matter of the Patents-In-Suit." *Id.* at 11, ¶ 109.

In his reply report, Dr. Sachs reiterated that he analyzed "the benefits provided by the inventions disclosed in the Patents-In-Suit, as well as the technical comparability to certain other patents licensed by Biedermann." ECF No. 605-4, 4–5, ¶ 3. On the latter point, he repeated his earlier opinion that "the Patents-In-Suit are technically comparable to certain patents licensed by Biedermann." *Id.*

Without explanation and in the conclusions to his initial and expert reports, Dr. Sachs arguably went further stating, "it is my opinion that each of the Comparable Licensed Patents that I reviewed in this matter pertain to comparable technology and offer benefits of similar importance to the Patents-In-Suit, [redacted]." ECF No. 605-1, at 25, ¶ 143; *see also* ECF No. 605-4, at 16, ¶ 39 (adding "placeholder implants"). Whatever Dr. Sachs meant by the conclusory, ambiguous phrase "offer benefits of similar importance," he was asked at deposition whether he, as a surgeon, was opining about the comparative values ("equal, greater, or lesser") of the licensed patents and the patents-in-suit. ECF No. 645-1, at 3 (212:11–15). His response was unequivocal and consistent with the body of his reports and BT's oral argument: "That was not my purpose in reviewing the licenses and the technical comparability of the patents. I wasn't looking to that and I wasn't trying to determine that." *Id.*

Ms. Davis's testimony was consistent with Dr. Sachs's statement. She testified, among other things, that she did not ask Dr. Sachs to assess the value supplied by the patented features at

Case 2:18-cv-00585-MSD-RJK Document 843 Filed 01/05/22 Page 11 of 17 PageID# 22763

issue, respectively, to K2M's Everest, Yukon, and Cascadia products. ECF No. 568-2, at 8–9 (60:22–61:9). Further, although not recalling whether Dr. Sachs analyzed the value of the patented features in the accused products relative to the non-patented features, Ms. Davis stated that, if he did, she did not rely upon it. *Id.* at 9 (62:17–63:2); *see Ericcson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (identifying "[t]he essential requirement is that the ultimate royalty award must be based on the incremental value that the patented invention adds to the end product").

The foregoing demonstrates that, at oral argument, BT did not contest K2M's claim that Dr. Sachs did not address the relative comparative values of the technology licensed to Stryker (and others) and the infringing uses made of the asserted patents. Moreover, far from misapprehending BT's argument, the Court ruled consistent therewith. BT's post-ruling dissatisfaction with the outcome does not support a second bite at the apple.

**3. Neither the facts initially presented by BT, nor the "new" facts it seeks to present after the fact warrant reconsideration of the prior ruling.**

**a. The record at the time the Court ruled.**

Putting aside BT's argument at the hearing, for a moment, does not advance its cause. Even if BT continued to argue that Dr. Sachs opined about the relative comparative values of the licensed technology and the asserted patents, the record before the Court prior to the ruling, including Dr. Sachs's express denial that he engaged in that task, forecloses such a claim. Notwithstanding that disavowal and the repeated statements in Dr. Sachs's report that he was opining about the technical comparability of the licensed patents, BT is left to argue, for all intents and purposes, that Dr. Sachs misunderstood why he reviewed the licenses and his own opinions. No good reason exists to credit that argument in assessing the reliability of Ms. Davis's opinions. BT's untimely effort to manufacture a dispute does not transform this into a factfinding matter for the jury or absolve

the Court of its *Daubert* gatekeeping responsibility.

Further, Dr. Sachs's one-sentence statement that the licensed patents "offer benefits of similar importance to the" asserted patents cannot bear the weight BT places upon it relative to *Daubert* inquiry for Ms. Davis and apportionment. Such a generic statement does little to aid the expert's task of reliably "separat[ing] or apportion[ing] . . . the patentee's damages between the patented feature[s] and the unpatented features." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). The excerpts of Dr. Sachs's report (and the reply report) provided to the Court prior to the ruling nowhere separate out or discuss the unpatented features of K2M's accused products (or those of the Stryker products covered by the Stryker license). Ms. Davis recognized this in testifying that she did not rely upon Dr. Sachs to assess the value of the patented features in the accused products relative to non-patented features. ECF No. 568-2, at 9 (62:17–63:2).

The record before the Court prior to the ruling, including Dr. Sachs's discussion of the Stryker license, also confirms that he did not address the relative comparative values of the licensed technology and the infringing uses made of the asserted patents. In assessing the Stryker license, Dr. Sachs began by identifying  that were licensed to Stryker. ECF No. 605-1, at 3–4, ¶ 90. Then, with respect to each, he typically discussed the invention's subject matter, recited the key portion of the claims, briefly compared the specification to the specifications of the asserted patents, and then concluded that the licensed patent (or application) was "technically comparable" to the claims of the asserted patents. *See id.* at 4–11, ¶¶ 92–108; *see, e.g., id.* at 5–6, ¶ 95 (stating that "[a]s the  Patent is directed to  , it is technically comparable to the asserted claims of the  ").

In doing so, Dr. Sachs also briefly listed the patent or application's description of the benefit of the licensed technology. *See, e.g.*, *id.* at 8, ¶ 101 (noting that [redacted]"). He also discussed, in broad terms, the benefits of the asserted patents. *See, e.g.*, *id.* at 6, ¶ 97 (stating "this [asserted] patent provides similar benefits [redacted] Occasionally, Dr. Sachs broadly related the benefits of a particular licensed patent to the asserted patents. *See, e.g.*, *id.* at 9, ¶ 104 (stating that "[a]s the [redacted] Patent is directed to a [redacted] . . . it is technically comparable to the asserted claims in [several asserted patents]"); *see id.* (stating that "[t]he [redacted] Patent is also technically comparable to the remaining Patents-In-Suit . . . for the same reasons that the [redacted] Patent is technically comparable to the asserted claims, namely that these are all directed to [redacted]"); *see id.* at 11, ¶ 108. He concluded his analysis stating that, [redacted]." *Id.* at 11, ¶ 109.[3]

Such statements do not address the incremental value that the patented inventions add to K2M's accused products, or whether the incremental value of the technology licensed to Stryker

[3] Dr. Sachs's reply report, also submitted prior to the Court's ruling, did not specifically address the Stryker license. *See* ECF No. 605-4. It did, however, reiterate his opinions about the benefits of the asserted patents and the technical comparability between the licensed patents and the asserted patents. *Id.* at 6, ¶ 12.

for use in the Stryker products identified in the license serves as a reliable proxy for the damages dispute at hand.[4] *See Ericsson, Inc.*, 773 F.3d at 1226 (noting "the value to be measured is only the value of the infringing features of an accused product" and that "[w]hen the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features"); *see Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018) (specifying that "apportionment is required . . . [to] 'reflect the value attributable to the infringing features of the product, and no more'") (citation omitted). If one credits Dr. Sachs's deposition testimony, this was no accident. Dr. Sachs's reports lack information needed to assess the question of incremental value, as they nowhere discuss, for example, [REDACTED]. *See* ECF No. 552-3, at 2 ([REDACTED]). In analyzing the Stryker license, Dr. Sachs's reports also do not assess the value of K2M's alleged infringing uses of BT's asserted patents in the Everest and Yukon systems, or relate or compare such value to that of Stryker license. Accordingly, even if the Court ignores BT's hearing argument, the record as it existed prior to the Court's ruling fails to support reconsideration.

[4] This understanding is consistent with Ms. Davis's citation to and interpretation of Dr. Sachs's opinions regarding the Stryker license, as she noted only that "[REDACTED]." ECF No. 568-1, at 38, 38 n.165. The Court noted the same in its prior ruling. ECF No. 711, at 9, 24. And, this understanding comports with Dr. Sachs's deposition testimony identified during BT's oral argument. Ex. A at 15. Dr. Sachs clarified that all of the licensed patents were technically comparable to the patents-in-suit [REDACTED]s." *Id.* For the reasons previously discussed, the Court is not persuaded that such evidence "translate[s] to an economic value proposition," *see* ECF No. 722, at 6, of significance to the *Daubert* inquiry on Ms. Davis.

**b. The information submitted by BT after the prior ruling.**

Nor does the new information BT asks the Court to now consider support a different conclusion. Rather than being newly discovered, such information is "new" only in the sense that it was not previously and timely submitted.

In the introduction to his opening report, Dr. Sachs described his task as "to opine regarding the benefits of the Patents-In-Suit, including as used in the accused K2M products, *as well as regarding the technical comparability of patents covered by certain license agreements entered into by Biedermann* (collectively, the "Comparable Licensed Patents") and the Patent-In-Suit." ECF No. 723-1, at 5, ¶ 2 (emphasis added). Dr. Sachs also discussed his role relative to that of Ms. Davis stating:

> I understand that Julie L. Davis will offer expert opinions relating to damages for infringement in this matter. I understand that as a part of her damages opinions, Ms. Davis may consider technical information from experts like myself and analyze certain license agreements produced in this case. I have reviewed and analyzed certain patents at issue in the license agreements . . . and provided opinions in this report regarding the technology areas of those patents.

*Id.* at 6, ¶ 4.

Paragraph 28 of Dr. Sachs's opening report summarizes the material benefits enabled by the asserted patents, [REDACTED] *Id.* at 13, ¶ 28; *cf.* ECF No. 711, at 8–9, 35 n.26 (considering and assuming that Dr. Sachs so opined, but noting that this portion of the report had not been supplied to the Court). In paragraph 29, Dr. Sachs summarized the opinions discussed above, stating that [REDACTED]

[5] Consistent with BT's claims of infringement, the body of Dr. Sachs's opening report reviews in greater detail the benefits of the asserted patents and asserts that K2M's accused products incorporate some of the patented features. ECF No. 723-1, at 19–29, ¶¶ 46–88.

[redacted]' ECF No. 723-1, at 13–14, ¶ 29. For the reasons discussed above, these portions of Dr. Sachs's report do not warrant reconsideration.

BT also draws attention to several portions of Dr. Sachs's deposition testimony not previously supplied to the Court. In a series of questions concerning his analysis of patents covered by the [redacted] license, Dr. Sachs testified consistently with the testimony previously supplied to the Court:

Q. And did you do any evaluation as to what additional value [redacted]

. . .

A. I'm not the value analysis or the analyst on value analysis nor am I offering expertise on the value of the license itself. I identified from the license, the patents, and reviewed the technical comparability of the patents and that's what I offer here.

Q. So it would be fair to say that you did not do the work to determine [redacted]; is that fair?

. . .

A. I've give[n] you the answer, that I identified the patents from the license, reviewed the technical comparability of the patents from the license. I don't offer expertise as a value analyst, as a financial analyst, or as a license analyst or a license expert.

ECF No. 723-3, at 58, (226:19–227:12); *see id.* (228:6–18) (reiterating "I don't offer myself to be a value analyst, a financial analyst, or a license expert to be able to offer that background and that information for you in this report").

Dr. Sachs also responded to questions concerning technical comparability as follows:

Q. And what was your test to determine technical comparability?

A. In general terms, were we talking about patents that disclosed products, implants, that could be created that would work for spine surgery, [redacted]



[redacted]

Q. Okay. Well, what was required for you to conclude that it was technically comparable, that another patent that had been licensed was technically comparable to the patents in suit?

A. Again, I've given you the answer. Technically, [redacted]

*Id.* at 53 (206:3–23); *see id.* at 60 (235:2–7) (similarly testifying about technical comparability).

As observed by K2M, the foregoing testimony by Dr. Sachs tends to support the conclusions previously reached by the Court, *see* ECF No. 765, at 12–13, rather than providing grounds for reconsideration. Nor does Dr. Sachs's testimony about his [redacted], ECF No. 723-3, at 27 (101:19–103:22), provide grounds for reconsidering the Court's conclusion that he [redacted]." ECF No. 711, at 34.[6] To the extent that BT argues that such testimony shows that Dr. Sachs [redacted]. *Compare* ECF No. 645-1, at 3 (212:11–20), *with* ECF No. 771, at 8–9 (referencing an [redacted]

[6] BT also directs the Court to additional testimony by Ms. Davis. ECF No. 722, at 6–7 (citing ECF No. 723-4 at 6 (67:7–15)). Such testimony, however, falls far afield of BT's premise for reconsideration; namely, its apparent surprise at the Court's consideration of K2M's responsive arguments concerning Dr. Sachs. Accordingly, the Court declines to consider such testimony.

).

**CONCLUSION**

Accordingly, for the reasons stated herein, BT's motion for partial reconsideration of the Court's ruling excluding Ms. Davis's opinions on damages for failure to engage in apportionment regarding the Stryker license (ECF No. 719) is **DENIED**.

The Clerk shall forward a copy of this Opinion and Order to all counsel of record.

/s/
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
January 25, 2022